## SIMMS v. KEARSE.

### SAME v. WILLIAMS.

1. PRESUMPTION OF PAYMENT.—Where the obligor of a bond, secured by mortgage, died twenty-four years before action brought, no admission made by him in his lifetime can affect the presumption of payment arising from lapse of time.

2. IBID.—RECORDING.—The record of a mortgage does not rebut a presumption of satisfaction after the lapse of twenty years, there being no subsequent admission on the record of the debt as still unpaid.

3. IBID.—MORTGAGES—CASE CRITICISED.—There is no such trust relation on the part of the mortgagor towards the mortgagee as will prevent the presumption of satisfaction of the mortgage from lapse of time. An intimation in Thayer *v.* Cramer, 1 McCord Ch., 395, from which a contrary rule might be inferred, disapproved.

4. IBID.—IBID.—LIEN IN PARTITION.—Where lands of an intestate were sold for partition under decree of court in 1859, on one and two years' credit, the purchaser gave bond and mortgage to secure the purchase money, the sale was confirmed in 1860, and the officer directed to collect and distribute the money when due, where no payment was made after 1859, and action was instituted in 1893, the bond and mortgage will be presumed paid. The execution of a mortgage did not divest the statutory lien under the act of 1791, but where a mortgage is given to a third person, the master of the court, the presumption of payment will run against this lien.

Before IZLAR, J., Barnwell, November, 1893.

These were two actions for foreclosure instituted in 1893 by W. G. Simms, as clerk of court, against H. W. Kearse and others, and against C. A. Williams and others, purchasers respectively from Owen W. Manuel of the two tracts of land mortgaged by

him to the commissioner in equity in 1859, and described in the opinion of this court. The Circuit decree in both cases adjudged that the bonds were not actually paid, and that the presumption of payment was rebutted by the testimony of the debtor, the proof of his inability to pay, and his near relationship to the parties to whom the money was ultimately payable; also, that the presumption of payment does not run against the mortgagee in favor of the mortgagor, as the latter holds a relation of trust towards the former; and lastly, because the statutory lien under the act of 1791 for the purchase money of land of an intestate sold for partition is not limited in its duration by the statute. Accordingly, foreclosure was decreed and sale ordered. The defendants appealed, questioning by their exceptions the rulings of the Circuit Judge.

*Messrs. James E. Davis, Patterson & Holman,* and *I. L. Tobin,* for appellants.

*Messrs. J. M. Skinner* and *Thomas S. Moorman,* contra.

July 26, 1894. The opinion of the court was delivered by

Mr. Justice Pope. These two actions were tried separately in the Court of Common Pleas for Barnwell County, in this State, on its equity side, by Judge Izlar. By his decree in each case, he adjudged the plaintiff entitled to the relief as prayed for in each complaint. The defendants, respectively, have appealed from such decrees; but inasmuch as the issues in each case are the same, arising from identically the same state of facts, an order was passed, by consent, in this court, consolidating the two appeals. It seems that one John Manuel, while a citizen of Barnwell, in this State, departed this life in September, 1857, *intestate,* leaving as his heirs at law his widow, Mary, his sons, William, John, Melford, and Owen W. Manuel, and his daughters, Mary Bowen and Nancy E. Bowen. He was seized at the time of his death of two tracts of land, one containing 217 acres of land and the other tract of land containing 186 acres. In April, 1859, an action for partition of said lands amongst the said heirs at law was commenced in the Court of Equity for Barnwell, and such proceedings were had in such

action that Johnson Hagood, then commissioner of equity for said Barnwell District (now County), was directed to sell said lands, to the end that the proceeds of such sale might be divided amongst the heirs at law of said John Manuel, deceased, according to their respective rights therein under the laws of this commonwealth.

At such sale, which occurred on the 7th November, 1859, the said Owen W. Manuel became the purchaser of said 217 acres of land, at the price of $500, and as such purchaser executed his bond to said Hagood, as commissioner in equity, his successors in office and assigns, in the penalty of $1,000, conditioned to pay $250 and interest thereon on the 7th November, 1860, and to pay $250 and interest thereon on the 7th day of November, 1861, and also executed a mortgage of said 217 acres of land to secure the payment of said bond. This bond and mortgage were duly recorded in the office of the register of mesne conveyance for Barnwell County. Of the purchase money, only the sum of $139 was credited on said bond as of the 7th November, 1859. And at such sale the said Owen W. Manuel became the purchaser of the second tract, containing 186 acres, at the price of $450; and such purchaser executed his bond to said Hagood, as commissioner in equity, his successors in office and assigns, in the penalty of $900, conditioned to pay $225 on 7th November, 1860, and $225 on 7th November, 1861, with interest on each instalment from date of bond, and also executed a mortgage of said 186 acres of land to secure the payment of its purchase money. Of the said purchase money only $42 is credited on the bond as of 7th June, 1859. This mortgage was also duly recorded in the office of the register of mesne conveyance for Barnwell County. On the 7th day of February, 1860, an order was passed in the Court of Equity, confirming the sales of the two aforesaid tracts of land, and directing the commissioner in equity to collect the bonds when due and pay out the same to the parties in interest. Early in 1861, Johnson Hagood resigned his office as commissioner in equity, and a successor was duly appointed, who served as such until the duties of said office were devolved by a change in our organic law upon the clerk of the Circuit Court. The

present incumbent of that office is the plaintiff, who was elected to such office in 1883.

The present plaintiff, at the request of the distributees of John Manuel, deceased, has instituted (in February, 1893,) these two actions for the foreclosure of the two mortgages executed by Owen W. Manuel to Johnson Hagood, as commissioner, &c. Owen W. Manuel sold both parcels of land during his lifetime, and died *in 1869*. Accordingly, the plaintiff brought his actions for foreclosure against the present owners, the defendants named in the two actions. The defendants rely upon the presumption of payment arising from the lapse of more than twenty years from 7th November, 1861, up to commencement of these actions, February, 1893. The plaintiff insists that such presumptions cannot be allowed to exist: 1. Because Owen W. Manuel admitted in his lifetime that he had not paid his two bonds, and promised to do so. 2. Because the purchasers who now hold said lands had notice from the recording of the mortgages and the proceedings of record in the partition suit that such lands were held under the lien of the mortgages executed by Owen W. Manuel to Johnson Hagood, as commissioner in equity. 3. Because the defendants hold such lands as trustees for the distributees of the estate of John Manuel, deceased. 4. Because the act of 1791 gives a lien upon lands sold to effectuate partition amongst heirs at law until such purchase money is paid.

We will dispose of these positions in their order. When it is remembered that Owen W. Manuel, the principal obligor, whose promise to pay the bonds is relied upon to defeat the presumption of payment arising from the lapse of more than twenty years from the execution of the same by him, died in 1869, and that more than twenty years have elapsed since 1869 to February, 1893, at which time the actions for foreclosure were commenced, it seems to us that no force can be given to this (the first) proposition to repel this presumption of payment. Such a conclusion would be at variance with the well recognized principles of our laws. Appellants refer to and rely upon the decision of this court as made in the case of *Nobles* v. *Hogg*, 36 S. C., 328. In that case, where a

trustee appointed under a will which created a trust, when sued by his *cestui que trust*, admitted under oath in the trial of the cause that he had never at any time paid a farthing to such *cestui que trust*. It was there held that, inasmuch as the presumption of payment from lapse of time was rebuttable, and inasmuch as the trustee had made a solemn admission that he had never paid anything to his *cestui que trust*, such presumption could not arise. The distinction between that case and that of the case at bar is palpable, for there the trustee admitted in solemn form at the trial that the presumption was untenable, while in the case at bar the obligor to the bond had been dead for twenty-four years before the trial. This exception is overruled.

As to the second proposition, growing out of the notice to appellants from the recording of the two mortgages in the office of the register of deeds in the proper county, as required by our law in such cases made and provided, we are unable, under the proof in this case, to agree that a compliance with the recording acts has such effect. It is quite true, that recording of mortgages is notice to all persons of the lien set out in such mortgages; but this is true for only the twenty years reckoning from the date of such recording. Of course, there may be added to this period any time additional which would arise from an admission by the mortgagor *on such record* that the mortgage was still a subsisting lien. Of this latter fact there is no evidence in this case, nor do we well see how this could arise, when the mortgagor had been dead for twenty four years before actions brought.

As to the third proposition, which insists that the defendants hold such lands originally covered by the mortgage, as trustees for the distributees of John Manuel, who died in 1857. Such an idea might have been tenable prior to the act of 1791, which struck down and destroyed the former law as to mortgages of land, whereby, upon condition broken, the mortgagee had title to the land mortgaged. However, when the act of 1791 declared that, after condition broken, the mortgagor was still the owner in fee of the land mortgaged, and the mortgagee was left his lien on the land to secure his debt,

all the prior law was gone. A uniform line of decisions in this state sustain this view. · In *Thayer* v. *Cramer*, 1 McCord Ch., 395, Judge Nott did say something that has given color to the idea that a mortgagor is a trustee for the mortgagee, and that a purchaser from such mortgagor with notice of the mortgage occupied no better position; but, as was pointed out in *Norton* v. *Lewis*, 3 S. C., 32, such an expression by Judge Nott was not essential to the conclusion there reached. Judge O'Neall, in the case of *Thayer* v. *Davidson*, Bail. Eq., 412, doubted whether there was any trust involved in the relation of mortgagor to mortgagee. This idea of a trust being enforcible in such cases does not meet with our approval, and, as we think, is not sanctioned by our decisions.

The last proposition, as to the effect of the act of 1791 upon the sales of land to procure a partition of the lands of John Manuel, deceased, amongst his heirs at law according to their respective rights therein, presents a more serious question. That statute was thus summarised by Chancellor Dunkin, *McQueen* v. *Fletcher*, 4 Rich. Eq., 159: "The act of 1791 (5 Stat., 164,) provides that, where the land cannot be fairly and equally divided, the commissioners shall make a special return, certifying to the court their opinion whether it will be more for the benefit of the parties to deliver over to one or more of them the property which cannot be fairly divided, upon the payment of a sum of money to be assessed by the commissioners, *or to sell the same at public auction* (italics ours); and, if the court shall be of opinion that it would be for the benefit of the parties, that the same shall be vested in one person or more persons entitled to a portion of the same, on the payment of a sum of money, they shall determine accordingly, and the said person or persons, on the payment of the consideration money, shall be vested with the estate so adjudged to them as fully and absolutely as the ancestor was vested. *But if it shall appear to the court to be more for the interest of the parties that the same should be sold, they shall direct a sale on such credit as they shall deem right; and the property so sold shall stand pledged for the payment of the purchase money.*"

In the case at bar, in the year 1859, upon a return of commis-

sioners in partition made in an action to which all the heirs at law of John Manuel, deceased, were made parties, such heirs at law being all of full age, the Court of Equity for Barnwell County determined that it was for the best interest of all of such parties that the lands should be sold on a credit of one and two years, and it was so decreed. The commissioner in equity sold the lands, and his sales so made were confirmed, and he was ordered to collect the bonds when due and pay out the proceeds when collected to the parties according to their respective interest therein. The bonds are each credited with a partial payment as made in 1859, and no payments are credited on the bonds since that date (1859). The last instalments of the bonds matured in November, 1861. Some of the children of John Owen have died since the sales were made, leaving children some of whom are minors.

It may be as well that we should say at the outset, that the decree of the chancellor directing a sale on a credit secured by a mortgage of the lands sold, will not be construed by us as divesting the transaction of the statutory lien under the act of 1791, for the payment of the purchase money. This being an action for the partition of land belonging to the estate of *intestate* among his heirs at law, falls directly under the provisions of the act of 1791. We are inclined to hold, however, that there is a distinction to be made between cases where lands of an intestate are assigned to one or more persons in interest by the court, upon the condition that they pay the purchase money as assessed by the commissioners in partition to some of the other parties who get no land, and the cases where a sale is ordered by the court to effectuate a partition on a credit to be made by an officer of court to whom the bonds are made payable, and the distinction is this: in the first case, no party comes between the parties as the representative of both, while in the late case, the officer of court so intervenes. *McQueen* v. *Fletcher*, *supra*, is an illustration of the first case.

But does the statutory lien for the purchase money, or statutory mortgage, as it is sometimes called, never cease? This question was considered in *McQueen* v. *Fletcher*, *supra*, and that eminent chancellor, Job Johnstone, who heard the case on Cir-

4—42

cuit, held: "But the statute of 1791 gives a *lien* for the pur-
chase money of an intestate's land sold for partition; * * *
and I may be told that independently of the judgment in par-
tition in this case this lien still subsists, *but I hold that the same
lapse of time which would presume satisfaction of a judgment, a
mortgage, or specialty debt, will raise a similar presumption under
a statutory lien*" (italics ours). When the Court of Appeals
rendered its judgment, it was therein held: "And so if the
judgment transferred the title and created a lien, and yet the
court is satisfied *by presumption from lapse of time*, or otherwise,
the debt has been paid, the judgment is gone, and the lien,
which is merely an incident, has ceased to exist." This court
has so recently examined the question of presumption of pay-
ment from lapse of twenty years in cases of title, mortgages,
judgments, and debts by specialty, that we fear we will be but
repeating ourselves to enlarge at this time upon what has been
so recently decided by us in the cases of *Trustees of Wadsworth-
ville Poor School* v. *Jennings*, 40 S. C., 168, and *Lauderdale* v.
*Mahon*, 41 *Id.*, 97.

In the case at bar, the commissioner in equity from 1859 till
1868, and from 1868 until 1893 the clerk of court, has had the
legal capacity to sue upon these bonds, and the decretal order
of 1860 made it their duty to do so. After this lapse of time,
more than twenty years, everything will be presumed to give
effect to the plea of payment, such plea not being destroyed
by the proof of any facts in rebuttal thereof.

It is the judgment of this court, that the decrees of the Cir-
cuit Judge in each of the cases be reversed, and that the causes
be remanded to the Circuit Court, with directions that a decree
be formulated in each case dismissing the complaint.